UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSEPH WAYNE BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CV-303-TLS |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Joseph Wayne Butler, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff requested a hearing after his applications were denied initially and upon reconsideration. In May 2012, an administrative law judge (ALJ) held a hearing on the Plaintiff's applications. On September 13, 2012, the ALJ issued a Decision finding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. In September 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. The Plaintiff then filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## EVIDENCE OF RECORD

The Plaintiff was born on August 12, 1963. He completed the tenth grade, and later received a General Equivalency Degree. The Plaintiff has a lengthy work history that includes working as a molding machine foreman and a steel erector.

The Plaintiff claims to have become disabled on December 22, 2010, due to neck and back pain. The Plaintiff injured his back in a 2007 workplace accident. Following fusion surgery, he was released to work by Dr. Muhlbauer in April 2008 with a permanent restriction on lifting no more than 50 pounds. In summer 2009, the Plaintiff against sought treatment for thoracic back pain. Eventually, the Plaintiff began seeing a pain management physician, Dr. Lazoff. However, the Plaintiff's treating physicians continued to affirm that he could return to work without additional permanent restrictions. (R. at 278–79, 331, 358, 381 (return to work orders with no additional restrictions dated 10/19/09, 8/18/11, 4/10/12, and 5/29/12).)

The Plaintiff lives with his 22-year-old son. The Plaintiff testified that around the middle of the summer 2011, he began to experience even sharper pains, more back spasms, less sleep, and more numbing in his arms. He stated that he could stand for only 5 to 10 minutes at a time, and could only sit for 20 minutes. The Plaintiff testified that when his back locked up, his immobility would last between 2 and 3 days to a week or two. He stated that his back had started going out twice a month, and that he also experienced an additional two to three "bad days" because of other back and neck problems. He reported walking with a small limp and having a limited ability to bend. The Plaintiff testified that he could do chores on some days, such as washing and folding a small load of laundry, vacuuming the living room floor, bagging the trash, and doing a small load of dishes.

## ANALYSIS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. *See* 20 C.F.R. § 404.1520. The Plaintiff was unemployed and satisfied the step one inquiry. At step two, the ALJ determined that the Plaintiff's history of spine injury status post fusion and knee pain were severe impairments because they caused more than minimal limitations in his ability to perform basic work activities. Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in" appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment rises to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." *Id.* at § 404.1520(d). But if the impairment falls short, an ALJ must examine the claimant's "residual functional capacity"—the types of things he can still do physically despite his limitations—to determine whether he can perform this "past relevant work," *id.* at § 404.1520(a)(4)(iv), or, failing that, whether the claimant can "make an adjustment to other work" given his "age, education, and work experience," *id.* at § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairment did not meet or equal any of the listings in appendix 1, and that he had the residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b). However, the ALJ added that the Plaintiff could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps or

stairs, balance, stoop, kneel, crouch, or crawl. Additionally, the Plaintiff was to avoid concentrated exposure to wetness and hazards such as unguarded machinery, unprotected heights, and wet or slippery surfaces.

In arriving at the RFC, the ALJ acknowledged the Plaintiff's testimony regarding his worsening back pain and functional limitations. The ALJ found, however, that the Plaintiff's testimony about his limitations was not supported by the medical opinions and treatment notes from the Plaintiff's own physicians. The ALJ relied heavily on the treatment notes and opinions of Dr. Lazoff and Dr. Shugart, an orthopedic surgeon, and the diagnostic imaging of the Plaintiff's spine. The ALJ also discussed in detail the February 2011 independent examination conducted by Dr. Abdali Jan. He gave great weight to the opinions of State agency physicians that the Plaintiff could perform a restricted range of light work, as these opinions were supported by the record and not inconsistent with any other medical opinions, except that they were more restrictive that the opinion of the treating source. The ALJ concluded that "[a]lthough the record shows the claimant experiences pain and discomfort due to his physical impairments, it does not establish debilitating functional limitations." (R. at 25.) The ALJ found that a restricted range of light work accounted for the Plaintiff's back and knee pain and limited range of motion, and was significantly more generous than his treating source. Because a sufficient number of jobs existed in the national economy that the Plaintiff could perform even in light of his restrictions, the ALJ denied his claim.

On appeal to this Court, the Plaintiff claims that the ALJ failed to give controlling weight to the Plaintiffs' treating physicians' opinions concerning his neck and low back pain, and that he failed to consider the Plaintiff's consistent and arduous work history when evaluating the

4

Plaintiff's credibility. The Plaintiff maintains that he was entitled to "substantial credibility" and, when combined with his objective medical impairments and long term pain management, he presented a strong basis for a finding of disability. (Pl.'s Brief 12, ECF No. 28.)

In an appeal from the denial of social security benefits, the court is not free to replace the ALJ's estimate of the medical evidence with its own. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (stating that the court may not reweigh the evidence or substitute its judgment for that of the ALJ). Instead, the court reviews the ALJ's decision for substantial evidence, 42 U.S.C. § 405(g), meaning that the court ensures that the decision rests on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When an ALJ recommends that the agency deny benefits, it must first "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

There is no dispute that the Plaintiff has a history of complaints of back pain, and sought treatment for this purported pain. However, there is no requirement that an ALJ accept a plaintiff's subjective complaints insofar as they clashed with other, objective medical evidence

5

in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). The ALJ acknowledged the Plaintiff's testimony concerning his pain and the limitations it caused, stated that the medical evidence did not support the Plaintiff's testimony about his limitations, and devoted significant space in her Decision to a discussion of the medical evidence. The ALJ found that the Plaintiff had severe impairments related to his history of spine injury status post fusion. The ALJ further opined that a restricted range of light work would account for the Plaintiff's back and knee pain and limited range of motion and that it was significantly more generous than his treating source, who released him to return to work with a permanent 50-pound weight lifting restriction.

The Plaintiff finds fault with the ALJ's analysis of the medical evidence, arguing that the ALJ failed to give controlling weight to his treating physicians' opinions concerning neck and low back pain. The Plaintiff submits that both Dr. Shugart and Dr. Lazoff diagnosed chronic neck and arm pain or cervical radiculopathy, that both suggested further testing to determine the optimal treatment plan, but that the spine problems were only treated with pain medications due to cost restraints. The problem with the Plaintiff's controlling weight argument is that the ALJ did consider the opinions of the Plaintiff's treating physicians, and those opinions did not include any greater restrictions or functional limitations than those the ALJ found. For example, in May 2012, Dr. Lazoff stated—in response to the ALJ's request that he complete a medical source statement of ability to do work-related activity—that the Plaintiff remained restricted to lifting no more than 50 pounds as indicated by Dr. Muhlbauer in 2008, but that no other formal work restrictions were imposed. Likewise, although Dr. Shugart diagnosed the Plaintiff with back pain, he did not opine that the Plaintiff was limited in his ability to perform light work. When Dr. Shugart evaluated the Plaintiff in March 2012, he ordered a nerve conduction study in his right

6

leg and both arms, and an MRI of the cervical and thoracic spine based on the Plaintiff's clinical signs. The MRI of the thoracic spine showed no appreciable complications from surgery and no significant narrowing. Dr. Shugart reported in April 2010 that his review of the Plaintiff's thoracic MRI did not reveal the need for further surgical treatment. He wrote: "No evidence of any significant issues that will require any surgical intervention based on the MRI from 03/16/2012." (R. at 356.) The Plaintiff acknowledges that the MRI showed no appreciable complications from his previous surgery, but asserts that the MRI was less than optimal because detailed evaluation of the neuroforamen was limited at the levels of the thoracic fusion. (R. at 336.)

The Plaintiff believes that his doctors identified cervical and lumbar spine "issues," but did not treat them in "a standard medical manner due to cost." (Pl.'s Brief 14, ECF No. 28.) The issues he points to, however, were based largely on his subjective complaints of pain, such as Dr. Lazoff's impressions of chronic low back pain. The Plaintiff also points to a positive straight leg raising test, and tenderness along the spine. (R. at 288–89.) In this same report, dated April 22, 2010, Dr. Lazoff stated that the range of motion of the cervical spine was functional and within normal limits, with some restricted motion of the thoracic spine, that the Plaintiff's strength was 5/5 throughout both upper and lower extremities, and that his 2008 MRI revealed ossification of the posterior longitudinal ligament from C3 to C7 with moderate stenosis at C5-6 and C6-7. There was no cord edema or disk protrusions. The sitting straight leg raise was 90 degrees bilaterally with mild positive tripod on the right. Dr. Lazoff noted that the Plaintiff had been released to regular work with the exception of a 50-pound weight restriction. He recommended tramadol for pain management, indicated that he would follow up in four weeks, and stated that

the Plaintiff was to "[c]ontinue his regular work activities." (R. at 289.)

The ALJ's statements regarding the lack of functional limitations, and conclusion that the RFC was more restrictive than any imposed by a treating physician finds substantial support in the record. The Plaintiff's argument that the ALJ failed to offer good reason for discounting the opinion of a treating physician is puzzling. There is simply no doctor's opinion contained in the record that indicates greater restrictions than those found by the ALJ. The Plaintiff might be suggesting that the ALJ should have given controlling weight to the physicians' opinions that he was in pain. Their opinions, however, were that the Plaintiff complained to have chronic pain. Ultimately, every medical source that the Plaintiff cites to is either the result of self-reported symptoms, or serves to undercut the severity of his allegations. The fact that further testing *may* have revealed objective evidence to support his reports of pain does not alter the nature of the evidence that was in the record. The ALJ did not ignore medical evidence that conflicted with her conclusion; there simply was no objective medical evidence or opinions to support the Plaintiff's claimed limitations.

Given the lack of objective medical evidence supporting a disability finding, the Plaintiff's claim that he is unable to perform even light work can only succeed to the extent his subjective accounts of pain and its debilitating effects are found to be credible. The Plaintiff's statements concerning his limitations, and whether they are believable, is the crux of the Plaintiff's case. An ALJ must consider a claimant's subjective complaints of pain if the claimant has a medically determined impairment that could reasonably be expected to produce that pain. 20 C.F.R. § 404.1529(c)(1); *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014). Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be

8

expected to cause the alleged symptoms." (R. at 23.) The ALJ went on to conclude that "the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not fully credible." (*Id.*) The ALJ based this conclusion on the lack of supporting medical evidence concerning functional limitations. The absence of objective medical evidence is just one factor to be considered when considering subjective complaints of pain. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). An individual's statements about the intensity and persistence of pain or about the effect the pain has on his ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. *Moore*, 743 F.3d at 1125 (citing SSR 96-7p); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("Even when . . . the claimant attributes her pain to a physical rather than a psychological cause, the administrative law judge cannot disbelieve her testimony solely because it seems in excess of the 'objective' medical testimony."); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) (stating that the governing "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding"); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (An ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." (quotation omitted)); *Clifford v. Apfel*, 227 F.3d 863, 871–72 (7th Cir. 2000).

> With respect to the other factors to consider, the Seventh Circuit has instructed that:
>
> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged

9

> inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) (citation omitted). Here, the ALJ solicited details of the Plaintiff's activities and the extent to which the Plaintiff could perform those activities without experiencing pain. The ALJ also recounted the medications that the Plaintiff took, and inquired into treatment he received. The ALJ noted that the Plaintiff's girlfriend supported his testimony about his limitations. However, the ALJ did not expound on these aspects of the record or otherwise connect them to her conclusion that the Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not fully credible." (R. at 23.) Rather, the ALJ limited her discussion to the lack of objective medical evidence—it was the *only* specific reason the ALJ cited to support her credibility determination.

Additionally, the ALJ did not indicate which of the Plaintiff's statements were or were not credible. *See Chase v. Astrue*, 458 Fed. Appx. 553, 558 (7th Cir. 2012) (stating that ALJ's use of phrase "not entirely credible" was "meaningless boilerplate" and remanding case so ALJ could fully assess the plaintiff's credibility as part of the RFC determination). "The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010). For example, the ALJ noted that the Plaintiff stated that his back went out about twice a month, but did not express what weight he gave this testimony, or discuss the Plaintiff's claim that he could not perform any activities during these

episodes. Given the number of bad days, the Plaintiff argues that he does not have the ability to maintain regular and continuous employment irrespective of how much he could lift on "good" days. The Plaintiff also testified that he could stand 5 to 10 minutes, sit for 20 minutes, and had to constantly adjust himself while sitting. Again, the ALJ noted this testimony, but her finding that the Plaintiff's "statements" concerning the limiting effects of his symptoms were not "fully credible" does not explain whether these particular stated limitations were deemed credible, or how they impacted the RFC findings.

The ALJ has the responsibility of resolving any conflicts between the claimant's testimony and the medical evidence. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). Although an ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), the ALJ is still required to "build an accurate and logical bridge between the evidence and the result." *Shramek*, 226 F.3d at 811 (internal quotation marks omitted). Moreover, a court has greater freedom to review credibility determinations that are based on objective factors or fundamental implausibilities, rather than subjective considerations. *Clifford*, 227 F.3d at 872. Here, the only subjective consideration the ALJ offered was her "observation of the claimant at the hearing." (R. at 25.) However, the ALJ makes only a conclusory statement that she relied on this observation without any explanation of what she observed or how it undermined the Plaintiff's testimony.

The ALJ's Decision does not evidence that she considered factors outside the lack of objective medical evidence to find that the Plaintiff exaggerated the limiting effect of his back

11

and neck pain. Additionally, her decision does not describe which of the Plaintiff's statements were unbelievable. The ALJ's determination was not "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. While the lack of objective medical evidence is certainly relevant, according to governing standards, it cannot be the sole reason for discrediting the Plaintiff. *See, e.g.*, *Castille v. Astrue*, 617 F.3d 923, 929–30 (7th Cir. 2010) (although lack of objective evidence was cited in the ALJ's credibility determination, the ALJ also discussed a report casting doubt on the plaintiff's credibility, the plaintiff's failure to adhere to prescribed treatment, her daily activities, and inconsistencies in the plaintiff's own testimony). The Court can certainly understand the ALJ's reliance on the fact that, despite the Plaintiff's attempts to obtain treatment for back problems and pain, nowhere in the record is any physician's note limiting his ability to work or any diagnosis suggesting that his back pain was so acute that it would be considered disabling. However, the ALJ's failure to articulate reasons for her credibility assessment that were based on the entire record, and not just the objective medical findings, requires a remand for greater elaboration. *See Binion*, 108 F.3d at 782 (noting that reversal is required where an ALJ commits an error of law "without regard to the volume of evidence in support of the factual findings").

On remand the ALJ must consider all of the relevant factors under SSR 96–7p, not just the medical evidence (or lack thereof). Additionally, while the Court does not agree that the ALJ's failure to analyze the Plaintiff's prior work history "calls into question the ALJ's entire credibility analysis" (Pl.'s Brief 12, ECF No. 28), the ALJ should determine what weight, if any, to assign to the Plaintiff's past work record and his stated desire to work if he were physically

able.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on October 27, 2014.

                                                    s/ Theresa L. Springmann
                                                   THERESA L. SPRINGMANN
                                                   UNITED STATES DISTRICT COURT